IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MOGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 23 C 2868 |
| ) | |
| PORTFOLIO MEDIA INC., ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Michael Mogan filed suit against Portfolio Media Inc., which owns the legal news outlet Law360. Mogan alleges that Portfolio defamed him and portrayed him in a false light in a series of Law360 articles that reported on two federal cases filed by Mogan, who is an attorney. Mogan's initial complaint asserted claims arising from a Law360 article published in May 2022. He then filed an amended complaint to add claims arising from a Law360 article published in May 2023. Mogan now seeks leave to file a second amended complaint that asserts claims arising from a Law360 article published in January 2022. For the following reasons, the Court denies the motion for leave to amend and dismisses the suit for failure to state a claim upon which relief can be granted.

Background

Portfolio owns and operates Law360, which is a subscription-based news outlet with more than two million subscribers. First Am. Compl. (FAC) ¶ 10. From January 2022 through May 2023, Law360 published three articles that reported on two federal

cases filed by Mogan: *Mogan v. Sacks, Ricketts & Case LLP*, No. 21-CV-08431 (N.D. Cal. 2021), and *Mogan v. State Bar of California*, No. 23-CV-930 (C.D. Cal. 2023).

A.   **January 2022 article**

In January 2022, Law360 published an article entitled "Calif. Atty Sanctioned In Suit Against Airbnb, Workers" that reported on *Mogan v. Sacks, Ricketts & Case LLP*, No. 21-CV-08431, 2022 WL 119212 (N.D. Cal. Jan. 12, 2022).  The introduction to the story stated that Mogan had been sanctioned by a district court in the Northern District of California as a result of his "'baseless' attempt to sue Airbnb and three of its employees over other sanctions against him in an underlying action."  Def.'s Resp., Ex. 1 at 1 ("January 2022 Article").  The Law360 article stated that "Mogan made a number of accusations against Airbnb, including fraud, harassment and extortion, after the rental company successfully moved for sanctions against Mogan for attempting to reopen his client's case after it had been dealt with through arbitration."  *Id.*  According to the article, the district court concluded that Mogan's federal lawsuit was "baseless," "frivolous," and that "no reasonable attorney would have found [Mogan's] complaint to be well founded after conducting a reasonable and competent inquiry."  *Id.*  The article also stated that the district court "declined defendants' request to label Mogan a vexatious litigant."  *Id.*  The article then summarized the background of the case as follows:

> Mogan had represented Veronica McCluskey in California state court in a November 2019 suit against Airbnb, claiming that the rental company destroyed her business after she went on television complaining about Airbnb properties being used to sell drugs.  The case went to arbitration, and while Airbnb paid its arbitration fee within a legal timeframe, the transaction was not properly recorded.
>
> Mogan attempted to use the clerical error as a wedge to reopen the case

2

>in state court, but the court ruled that the transactional error was not a way out of McCluskey's contractual obligation to arbitrate her claim, and the court admonished Mogan for lying about when Airbnb made its payment. He was ordered to pay $22,160 for Airbnb's legal fees defending the motion.

*Id.*

Next, the article summarized Mogan's allegations in the subsequent federal lawsuit:

>Mogan hit back and filed suit against Airbnb and three employees — Jeff Henry, Dave Willner and Sanaz Ebrahini — asking to have the sanctions against him lifted and alleging abuse of process and unfair business practices from conspiracy to racketeering.
>
>He alleged that Airbnb failed to pay its arbitration fee on time and lied about it, and that Airbnb sought sanctions against Mogan for the purposes of harassment and extortion.

*Id.* Finally, the article recapped the district court's conclusion that sanctions were appropriate because Mogan's suit was "frivolous" given that his "claims had already been debunked in state court on multiple occasions." *Id.*

**B. May 2022 article**

In May 2022, Law360 published another article entitled "Airbnb Wins $162K In Fees From Sanctioned Calif. Atty" after the district court issued a subsequent order in the same lawsuit awarding attorney's fees to the defendants. *See Mogan v. Sacks, Ricketts & Case LLP*, No. 21-CV-08431, 2022 WL 1458518 (N.D. Cal. May 9, 2022). The May 2022 article stated that the district court "granted Airbnb's motion for attorney fees after finding in January that attorney Michael Mogan filed a frivolous suit accusing Airbnb of fraud, harassment and extortion after the rental company successfully moved for sanctions against Mogan for attempting to reopen his client's case after it had been dealt with through arbitration." Def.'s Resp., Ex. 2 at 1 ("May 2022 Article"). In addition

3

to summarizing the fee award order, the article repeated most of the information from the January 2022 article and included a link to that article in the text. *Id.*

**C.     May 2023 article**

Lastly, in May 2023 Law360 published an article entitled "Calif. Atty's ADA Suit Against State Bar Facing Uphill Battle." Def.'s Resp., Ex. 3 at 1 ("May 2023 Article"). This article reported on a separate lawsuit that Mogan had filed against the California State Bar. *See Mogan v. State Bar of Cal.*, No. CV 23-930, 2023 WL 5505909 (C.D. Cal. July 7, 2023). The introduction stated that "[a] California federal judge appeared poised on Monday to dismiss an attorney's lawsuit against the state bar alleging Americans With Disabilities Act violations by not giving him extra time to respond to a disciplinary proceeding, telling the parties his tentative ruling is that the bar has sovereign immunity." *Id.* In addition to summarizing the parties' arguments and the district court's tentative ruling on the sovereign immunity issue, the article explained the background of the dispute between Mogan and the California State Bar as follows:

> The federal case stems from a lawsuit filed in San Francisco County Superior Court by plaintiff Veronica McCluskey against three AribBnb [sic] employees over the termination of her account, in which Mogan represented McCluskey. Mogan runs his own Los Angeles-based firm, the Law Office of Michael Mogan.
>
> The judge in the state case in 2019 ordered Mogan to pay over $22,000 in sanctions to the defendants' attorneys after finding Mogan filed a "factually and legally frivolous" motion that, among other things, tried to take advantage of a clerical error by the American Arbitration Association and avoid the court's order to arbitrate the dispute.
>
> [. . .]
>
> The California State Bar filed a notice of disciplinary charges against Mogan in February alleging he disobeyed or violated an order of the court by not paying the monetary sanctions.

4

> Mogan filed the federal lawsuit two days later and amended the complaint in March, alleging the bar violated the Americans with Disabilities Act of 1990, the California Unruh Civil Rights Act and the Fourteenth Amendment.

The article then summarized Mogan's claims and the legal issues discussed at the public court hearing in May. It concluded by stating that the district court "took the arguments under submission." *Id.* at 2.

### D. Procedural background

Mogan's initial complaint in the present case asserted defamation and false light invasion of privacy claims arising from the May 2022 article. He alleged that nearly every statement in the article is false, although he did not elaborate on what, exactly, is incorrect about each statement. Mogan filed a first amended complaint that added claims arising from the May 2023 article. Portfolio filed a motion to dismiss the suit for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Mogan then filed a motion for leave to file a second amended complaint adding claims arising from the January 2022 article, which Mogan states he did not learn about until this litigation began. Portfolio informed the Court that it intended to oppose the motion for leave to amend by arguing that the proposed amendment would be futile because the proposed second amended complaint fails to state a claim upon which relief could be granted. The Court denied as moot Portfolio's motion to dismiss the first amended complaint and instructed the parties that Portfolio should include its Rule 12(b)(6) arguments in its response to Mogan's motion to amend.

## Discussion

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to

amend] when justice so requires."  "[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile."  *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).  "Amendment is futile when it seeks to add a new claim that does not allege a viable theory of liability."  *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022).  Courts "apply the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim."  *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015).

      Portfolio argues that the Court should deny Mogan's motion to amend his complaint because the proposed amendment would be futile.  It contends that the new claims in the second amended complaint and the existing claims in the first amended complaint lack merit because the statements in each Law360 article are protected by the fair report privilege.  Portfolio also argues that both versions of the complaint are insufficient because Mogan has not pleaded facts that plausibly suggest that Portfolio acted with negligence or recklessness in publishing the articles.  Finally, Portfolio asserts that the new claims in the proposed second amended complaint related to the January 2022 article are barred by Illinois's one-year statute of limitations for defamation and false light claims.

      For the reasons below, the Court agrees with Portfolio that, even if leave to amend were granted, the second amended complaint fails to state a claim because all of the statements at issue are covered by the fair report privilege.  The Court therefore does not address Portfolio's *mens rea* or statute-of-limitations arguments.

**A.     Defamation**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A motion under 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."  *Tobey v. Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012)).  Mogan has attached copies of the January 2022 and May 2022 Law360 articles to his proposed second amended complaint.  Although Mogan has not attached a copy of the May 2023 article, he references the article throughout his complaint and it is central to his claims.  Moreover, Portfolio has included a copy of that article in its joint response/motion to dismiss.  The Court therefore takes judicial notice of the January 2022, May 2022, and May 2023 Law360 articles.  The Court also takes judicial notice of the *Sacks, Ricketts & Case LLP* sanctions and fee orders and the *State Bar of California* dismissal order.  *See Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts."); *Olson v. Champaign County*, 784 F.3d 1093, 1097 (7th Cir. 2015) ("As a general rule, [courts] may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6).").

The parties agree that Illinois law governs the underlying tort claims of defamation and false light.  Under Illinois law, "[t]o state a defamation claim, a plaintiff

must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 580, 852 N.E.2d 825, 839 (2006).

Portfolio argues that Mogan cannot meet the second element because the statements at issue are covered by the fair report privilege. The parties dispute whether the Court should apply Illinois law or New York law to determine whether the articles are privileged. Portfolio argues that New York law should govern; Mogan argues that Illinois law should govern. The Court need not resolve this choice of law question, however, because the fair report privilege applies to the statements at issue even if the Court applies Illinois law (as Mogan prefers). *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 638 (7th Cir. 2021) ("Illinois courts have recognized time and time again that '[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome.'" (quoting *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 14, 10 N.E.3d 902, 905)).

Illinois recognizes a fair report privilege, "which promotes our system of self-governance by serving the public's interest in official proceedings, including judicial proceedings." *Solaia Tech., LLC*, 221 Ill. 2d at 585, 852 N.E.2d at 842. The privilege bars defamation suits for statements published in "a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern." *Id.* (quoting Restatement (Second) of Torts § 611 (1977)). Under Illinois law, "the fair report privilege has two requirements: (1) the report must be of an official proceeding; and (2) the report must be complete and accurate or a fair abridgement of

8

the official proceeding." *Id.* at 588, 852 N.E.2d at 843. The second requirement is satisfied if the report "convey[s] to readers 'a substantially correct account'" of the proceeding that does not include any "additions" by the publisher that "would convey a defamatory impression," "impute corrupt motives to anyone," or "indict expressly or by innuendo the veracity or integrity of the parties." *Id.* at 590, 852 N.E.2d at 845 (quoting Restatement (Second) of Torts § 611, cmt. f). Whether the fair report privilege applies is a question of law. *Id.* at 585, 852 N.E.2d at 839 ("A defamatory statement is not actionable if it is privileged; this is a question of law."); *see also Huon v. Denton,* 841 F.3d 733, 740 (7th Cir. 2016) (applying Illinois law) ("[T]he fair report privilege typically raises a question of law, not a question of fact, and is not concerned with the defendant's alleged subjective intent."). The Illinois Supreme Court has held that the privilege applies even if the defendant reporter knew that the statements made in the official proceedings were false. *Solaia Tech., LLC*, 221 Ill. 2d at 587, 852 N.E.2d at 843 ("We hold that the fair report privilege overcomes allegations of either common law or actual malice."); *Huon,* 841 F.3d at 740 (stating that, under Illinois law, the fair report privilege "is not concerned with the defendant's alleged subjective intent.").

Although Mogan alleges that numerous statements in the January 2022, May 2022, and May 2023 articles are false, he has not responded appropriately to Portfolio's fair report privilege argument. In particular, he has not explained whether and how he contends the Law360 articles misrepresented the *official proceedings* that are the subjects of those articles. In other words, Mogan has not identified any inconsistencies between the facts as described by Law360 and the facts as described by the court decisions at issue. The availability of the fair report privilege turns on whether the

9

statements accurately recount judicial proceedings, not on the underlying truth of any facts found by the courts in those proceedings. See *Hurst v. Cap. Cities Media, Inc.*, 323 Ill. App. 3d 812, 818, 754 N.E.2d 429, 434 (2001) ("The accuracy of the summary, not the truth or falsity of the information being summarized, is the benchmark of the privilege, because the one reporting on the proceeding or meeting is simply acting as the public eye, reporting information that could be accessed by any member of the public who was present for the [official proceeding]."); *Hill v. Schmidt*, 2012 IL App (5th) 110324, ¶ 17, 969 N.E.2d 563, 571 ("In resolving whether the privilege applies, the court does not question whether someone else believes differently than the official, or whether someone else is more correct than the official, or whether the status of affairs in the world is entirely different than that described by the official or in official proceedings, rather the court merely asks whether the reporter reported what the official said."). Mogan therefore has forfeited his argument that the Law360 articles are not privileged.

Even if Mogan had not forfeited the issue, the Court concludes that the fair report privilege applies. Each of the articles at issue "convey[s] to readers 'a substantially correct account'" of the court orders at issue that does not include any defamatory "additions" by Law360. *Solaia Tech., LLC*, 221 Ill. 2d at 590, 852 N.E.2d at 845 (quoting Restatement (Second) of Torts § 611, cmt. f). The Court will examine each statement in the order they are presented in the proposed second amended complaint.

Mogan first alleges that Law360 falsely reported that he "was sanctioned for filing a 'frivolous lawsuit against Airbnb Inc. and three of its employees over other sanctions levied against him in an underlying action." SAC ¶ 13. Mogan argues that the

10

statement is false because his lawsuit "was based on service of a motion never filed, false documents sent to [Mogan], and a threatening letter all of which were alleged in the complaint." Pl.'s Reply at 6. But, again, the question before this Court is whether the statement at issue conveys a substantially correct account of the official proceeding, not whether the official proceeding accurately portrayed the facts. The Court concludes that this statement is a substantially correct account of the district court's description of the case. *See Sacks, Ricketts & Case LLP*, 2022 WL 119212, at \*1 ("Plaintiff Michael Mogan, an attorney licensed in California, brought this case against Airbnb and three of its employees . . . for claims related to a sanction award against him in an underlying state court action brought on behalf of a client."); *id.* at \*2 (finding that Mogan's suit against Airbnb and three of its employees over "allegations that . . . Airbnb sought sanctions for improper purposes like harassment and extortion" in the *McCluskey* case was "frivolous"). Because the district court described Mogan's claims as "related to a sanction award against him," the Law360 articles repeating that information are protected by the fair report privilege.

Mogan next asserts that Law360 falsely reported that he "filed a frivolous suit accusing Airbnb of fraud, harassment and extortion after the rental company successfully moved for sanctions against Plaintiff for attempting to reopen his client's case after it had been dealt with through arbitration." SAC ¶ 14. The Court concludes that this statement correctly reports information contained in the January 2022 sanctions order. *See id.* at \*2 (finding "frivolous" Mogan's "allegations that (1) Airbnb failed to pay its arbitration fee on time and lied about it, and (2) Airbnb sought sanctions for improper purposes like harassment and extortion."); *id.* (stating that "Mogan was

11

sanctioned [by the state trial court] $22,159.50" because he "sought to take advantage of AAA's clerical error and [McCluskey's] own lengthy delays in order to evade her contractual obligation to arbitrate her claims and to avoid the effect of the Court's earlier order granting defendants' motion to compel arbitration" (quoting *McCluskey v. Henry*, No. CGC-18-567741, at 1 (Cal. Sup. Ct. Sept. 11, 2019))).

Mogan next says that Law360 reported that one of his "client's cases went to arbitration, and while Airbnb paid its arbitration fee within a legal timeframe, the transaction was not properly recorded. Defendant published statements online of and concerning [Mogan] stating that [he] attempted to use a clerical error as a wedge to reopen his client's case in state court." SAC ¶ 15. Mogan appears to argue that this statement is not privileged because "[a] California Appellate Court already reviewed the [*McCluskey*] order and came to a stark [sic] different conclusion of what occurred in arbitration proceedings." Pl.'s Reply at 6.

First, the Court notes that the California Court of Appeal *affirmed* the trial court's award of sanctions against Mogan in *McCluskey*. *See McCluskey v. Henry*, 56 Cal. App. 5th 1197, 1201, 270 Cal. Rptr. 3d 803, 805 (2020). The appellate court did not overturn any factual findings of the lower court. *See id.* at 1207, 270 Cal. Rptr. 3d at 810 ("In clear contradiction of the order compelling arbitration, Mogan, on behalf of McCluskey, filed a motion to lift the stay . . . . Mogan pursued this relief even though 10 days before the filing of the initial motion to stay, on May 1, AAA had expressly informed counsel that AAA *would arbitrate the claim* as soon as counsel confirmed McCluskey wanted to proceed to arbitration." (emphasis in original)).

Second, as discussed, the fair report privilege does not turn on what actually

12

occurred with the AAA arbitration fees. Rather, the question is whether Law360 accurately summarized an official proceeding—i.e., the district court's decision to sanction Mogan and award fees to the defendants in the *Sacks, Ricketts & Case LLP* case. The Court concludes that the Law360 statements provide a substantially correct account of the district court's description in those proceedings. *See Sacks, Ricketts & Case LLP*, 2022 WL 119212, at *2 ("[T]he state trial court found that Airbnb had timely paid its arbitration fee, that the American Arbitration Association made a clerical error by misapplying defendants' timely fees and administratively closing the case." (internal quotations omitted)); *id.* ("[T]he court reiterated that AAA misapplied the timely fees paid by Airbnb and that Mogan 'sought to take advantage of the AAA's clerical error and [McCluskey's] own lengthy delays in order to evade her contractual obligation to arbitrate her claims . . . .'" (quoting *McCluskey*, No. CGC-18-567741, at 1)).

Mogan next alleges that Law360 falsely reported that "[Mogan] filed a cause of action that claimed [he] asked to have sanctions against him lifted." SAC ¶ 16. In his reply, Mogan argues that "a review of the relief section of the complaint that included complex civil RICO and other personal injury claims makes clear Plaintiff seeks to have any sanctions lifted as the motion was never filed." Pl.'s Reply at 7 (internal citation omitted). This sentence is incoherent as written. The Court's best guess is that Mogan intends to argue that his *Sacks, Ricketts & Case* complaint did *not* expressly request that the district court lift the state court sanctions. The Court agrees that neither Mogan's complaint nor the district court's sanctions order in the *Sacks, Ricketts & Case LLP* case directly stated that Mogan is requesting that the court overturn the state court's sanctions.

13

Nonetheless, the district court's ruling made clear that the court considered Mogan's federal suit against Airbnb and its employees to be a brazen attempt to relitigate the same issues that led the state court to sanction Mogan. *See Sacks, Ricketts & Case LLP*, 2022 WL 119212, at *3 (holding that "all seven of [Mogan's] claims are . . . barred by the doctrine of issue preclusion because they were brought after final adjudication of these issues in state court" and concluding that "[n]o reasonable attorney would, after such sanctions and admonitions, think that claims premised on those very facts, even when embellished into new theories, would form a 'well-founded' complaint"). Thus, even if Mogan did not expressly ask the district court to overturn the state court sanctions, the lawsuit was in effect a collateral attack on the state court's decision to issue sanctions. Under such circumstances, Law360's minor inaccuracy in reporting the relief that Mogan sought does not defeat the fair report privilege. *See Harrison v. Chi. Sun-Times, Inc.,* 341 Ill. App. 3d 555, 572, 793 N.E.2d 760, 773 (2003) (holding that the fair report privilege applied to a newspaper story despite a technically inaccurate headline because "the gist or sting of the alleged defamation in the official report or proceedings" was the same as "the gist or sting in the news account"); *cf. Kopolovic v. Shah*, 2012 IL App (2d) 110383, ¶ 43, 967 N.E.2d 368, 383 ("A court considering the issue of substantial truth must focus on the heart or 'highlight' of the allegedly defamatory material, not on minor details or items of secondary importance."); *Glob. Relief Found., Inc. v. N.Y. Times Co.,* 390 F.3d 973, 982 (7th Cir. 2004) (stating that, for the defense of substantial truth to apply to a defamation action under Illinois law, "it is not necessary to establish the literal truth of inoffensive details" so long as "the gist of a defamatory statement is substantially true").

14

Mogan next alleges that Law360 published an article "after [he] attended a hearing with opposing counsel on May 8th, 2023 in Federal Court despite the fact the District Court still had not issued an order to the public yet as of May 23, 2023. [Mogan] had alleged claims under the ADA 42 U.S.C. § 12101, 42 U.S.C. Section 1983 and another claim. The District Court had distributed the tentative order to [Mogan] and opposing counsel and was still considering the matter as of May 23, 2023, after taking the matter under submission May 8, 2023." SAC ¶ 17. Although Mogan has not properly developed the point, it appears he is attempting to argue that, by prematurely reporting on the case before an order was issued, Law360 misrepresented the case's disposition or status. This argument fails, however, because there is no requirement that reporters wait for a "final" decision from a court before the fair report privilege attaches. *See* Restatement (Second) of Torts § 611, cmt. d ("Since the holding of an official hearing or meeting is in itself an official proceeding, the privilege includes the report of any official hearing or meeting, even though no other action is taken."). Moreover, the May 2023 article clearly indicated the preliminary nature of the judge's comments multiple times throughout the article with phrases such as "tentative ruling," "tentative opinion," and "tentative conclusion." *See* May 2023 Article at 1. The article further stated that the district court "took the arguments under submission" and "would think [them] over." *Id.* at 2. The Court therefore disagrees with Mogan's suggestion that the preliminary nature of the hearing somehow bars Law360 from claiming the fair report privilege for the May 2023 article.

Mogan next alleges that Law360 "falsely stated the federal case stems from a lawsuit filed in a San Francisco Court." SAC ¶ 18. Mogan does not explain what is

15

incorrect about the statement (or, for that matter, what is defamatory). Regardless, the Court concludes that this accurately reflects the public disciplinary proceedings initiated by the State Bar of California that ultimately led to Mogan's federal lawsuit against the State Bar. *See* Def.'s Resp., Ex. 7 ¶¶ 3–11 ("Respondent represented the plaintiff, Veronica McCluskey . . . in San Francisco County Superior Court" and violated the California Business and Professions Code "[b]y filing a frivolous motion to lift stay in the above-referenced proceeding.").

Mogan next asserts that Law360 falsely reported that "a Judge stated to [Mogan] he had [']compounded his misconduct' by accusing his opposing counsel of committing fraud on the court, which the judge found 'baseless and unprofessional' despite the fact Plaintiff had already subsequently proven to an Appellate Panel that opposing counsel did misrepresent what occurred to the Judge." SAC ¶ 19. The quoted language comes directly from the state court's sanctions order and is repeated in the federal court's sanctions order. *See McCluskey*, No. CGC-18-567741, at 1; *Sacks, Ricketts & Case LLP*, 2022 WL 119212, at *2. Moreover, as the Court has already noted, there is no support for Mogan's claim that the state appellate court disagreed with the trial court's findings of fact. The fair report privilege therefore applies.

Mogan next says that Law360 falsely reported that he "had on a prior date tried to take advantage of a clerical error by the American Arbitration Association and avoid a court's order to arbitrate a dispute." SAC ¶ 20. These allegations are repetitive of those found in paragraph 15 of the second amended complaint. The Court has already concluded that this statement is privileged.

Mogan next alleges that Law360 reported that "Plaintiff was facing another round

16

of sanctions after a baseless attempt to sue Airbnb and three of its employees over other sanctions against him in an underlying action." SAC ¶ 21. This allegation is repetitive of that in paragraph 13. The Court has already concluded that this statement is privileged.

Mogan next alleges that Portfolio "falsely stated on its Law360 website that Plaintiff made a number of accusations against Airbnb including fraud, harassment and extortion, after the rental company successfully moved for sanctions against Plaintiff for attempting to reopen his client's case after it had been dealt with through arbitration." SAC ¶ 22. This allegation is repetitive of that in paragraph 14. The Court has already concluded that this statement is privileged.

Mogan next alleges that Portfolio "falsely stated on its Law360 website that Plaintiff had represented his client in California state court in a November 2019 suit against Airbnb, claiming that the rental company destroyed her business after she went on television complaining about Airbnb properties being used to sell drugs and the case went to arbitration, and while Airbnb paid its arbitration fee within a legal timeframe, the transaction was not properly recorded." SAC ¶ 23. As the Court has repeatedly discussed, this summary accurately reflects the district court's description of the facts of *McCluskey*. *See Sacks*, *Ricketts & Case LLP*, 2022 WL 119212, at *2. The fair report privilege applies.

Mogan next alleges that Portfolio "falsely stated on its Law360 website that Plaintiff attempted to use the clerical error as a wedge to reopen the case in state court, but the court ruled that the transaction was not a way out of McCluskey's contractual obligation to arbitrate her claim, and the court admonished Mogan for lying about when

17

Airbnb made its payment." SAC ¶ 24. This allegation is repetitive of that in paragraph 15. The Court has already concluded that this statement is privileged.

Mogan next alleges that Portfolio "falsely stated on its Law360 website that Plaintiff hit back and filed suit against Airbnb and three employees—Jeff Henry, Dave Wilner, and Sanaz Ebrahini—asking to have the sanctions against him lifted and alleging abuse of process and unfair business practices from conspiracy to racketeering." SAC ¶ 25. This allegation is repetitive of that in paragraph 15. The Court has already concluded that this statement is privileged.

Lastly, Mogan asserts that Portfolio "falsely stated on its Law360 website that Plaintiff alleged that Airbnb failed to pay its arbitration fee on time and lied about it, and that Airbnb sought sanctions against Plaintiff for the purposes of harassment and extortion." SAC ¶ 26. The Court concludes that this statement accurately reports on the *Sacks, Ricketts & Case* proceedings. *See Sacks, Ricketts & Case LLP*, 2022 WL 119212, at *2 (finding "frivolous" Mogan's "allegations that (1) Airbnb failed to pay its arbitration fee on time and lied about it, and (2) Airbnb sought sanctions for improper purposes like harassment and extortion."); *id.* (stating that "Mogan was sanctioned [by the state trial court] $22,159.50" because Mogan "sought to take advantage of AAA's clerical error and [McCluskey's] own lengthy delays in order to evade her contractual obligation to arbitrate her claims and to avoid the effect of the Court's earlier order granting defendants' motion to compel arbitration" (quoting *McCluskey*, No. CGC-18-567741, at 1)).

In sum, the Court has reviewed the three articles at issue—including each of the statements specifically identified in the proposed second amended complaint—and

18

concludes that the articles provided "substantially correct account[s]" of the *Sacks, Ricketts & Case LLP* proceedings and the *State Bar* proceedings. Portfolio is entitled to application of the fair report privilege. Mogan therefore cannot state a claim for defamation.

**B.     False light invasion of privacy**

Mogan also asserts claims for false light invasion of privacy. Under Illinois law, however, "the same privileges are applicable to the false-light tort as to the defamation tort. Otherwise the privilege could be defeated by relabeling." *Sullivan v. Conway*, 157 F.3d 1092, 1098 (7th Cir. 1998); *see also* Restatement (Second) of Torts § 625G, cmt. a ("Under any circumstances that would give rise to a conditional privilege for the publication of defamation, there is likewise a conditional privilege for the invasion of privacy."). Because the Court has concluded that Portfolio is entitled to the fair report privilege, Mogan's false light claims are also barred.

**C.     Dismissal with prejudice**

Generally, "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion*, 786 F.3d at 519. There is an exception to this general rule, however, "where it is clear that the defect cannot be corrected so that amendment is futile." *Id.* At 520. Under such circumstances, a court may "deny leave to amend and enter an immediate final judgment." *Id.* The Court has thoroughly compared the articles and official proceedings at issue and concludes that the articles are clearly privileged as fair reports of official proceedings. Nothing in Mogan's proposed second amended complaint alters this conclusion (nor could any subsequent

amendment). Dismissal with prejudice is therefore appropriate.

## Conclusion

For the reasons stated above, the Court denies Mogan's motion for leave to amend his complaint [dkt. 20] and grant's Portfolio's motion to dismiss [dkt. 22]. The Court directs the Clerk to enter judgment stating: This case is dismissed with prejudice.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 9, 2024